**Kathleen ZAFARANA and Brad Dumville, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**PFIZER INC. and Pharmacia & Upjohn Co., Defendants.**

**Civil Action No. 09–cv–4026.**

United States District Court, E.D. Pennsylvania.

July 20, 2010.

Donald E. Haviland, Jr., Robert G. Hughes, Haviland Hughes LLC, Philadelphia, PA, for Plaintiffs.

Raymond M. Williams, DLA Piper Rudnick Gray Cary, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This case is now before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Civil Consumer Class Action Complaint (Doc. No. 17). For the reasons set forth below, Defendants' Motion is GRANTED.

### Factual Background [1]

Plaintiffs bring this suit to recover for the actions taken by Defendants in marketing, promoting, and selling twelve of their prescription medications: Lyrica, Geodon, Relpax, DepoProvera, Zyvox, Lipitor, Zithromax, Zoloft, Zyrtec, Viagra, Aricept, and Norvasc. All of these drugs fall under the purview of the Federal Food, Drug, and Cosmetic Act ("FDCA"), which requires that all pharmaceutical drugs receive approval as being safe and effective for the treatment of specific conditions and in specific dosages. Further, the Act limits companies to promoting and marketing their drugs for these approved uses and dosages. Plaintiffs assert, however, that Defendants have a corporate culture that fosters ambivalence to the FDCA as well as a history of violating the Act in order to maximize profits on their approved drugs.

For each of the drugs named in their Amended Complaint, Plaintiffs allege that Defendants engaged in a campaign of fraudulent and misleading marketing and advertised these drugs for off-label uses. This conduct culminated in the U.S. Department of Justice's September 2, 2009, announcement that it had settled several qui tam actions brought against Defendants for their marketing of drugs in violation of the FDCA between January 1, 2001, and October 31, 2008, for which Defendants agreed to pay over $2 billion in fines.

Plaintiff Zafarana is a resident of New Jersey and was prescribed Lyrica to treat her idiopathic torticollis. The FDA approved Lyrica on December 30, 2004, as a treatment for diabetic peripheral neuropathy and postherpetic neuralgia. Later, on June 13, 2005, the FDA approved Lyrica for use as an adjunctive treatment of partial onset seizures in adults with epilepsy. Finally, Lyrica has been approved for the treatment of fibromyalgia. Plaintiffs, however, allege that the drug was also promoted for off-label use, including as a treatment for chronic pain, neuropathic pain, perioperative pain, and migraines. In addition, Defendants are alleged to have used unsubstantiated, false, and misleading comparative studies about the efficacy, safety, and cost-effectiveness of Lyrica. Plaintiff Zafarana took Lyrica from at least January of 2006 until January of 2007, and claims that it had no medical benefit for her condition. Further, Plaintiff alleges that she suffered from two side effects of Lyrica: weight gain and blurred vision. Finally, Plaintiff asserts that she paid a significant amount more for Lyrica than she would have paid for other, recog-

---

1. In line with a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss, all factual allegations are viewed in the light most favorable to the non-moving party. *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008) (citations omitted).

nized, treatments for idiopathic torticollis, such as tylenol and stretching.

Plaintiff Dumville is currently a resident of Wisconsin, but in 2001 received treatment for his depression in Pennsylvania, and was prescribed Geodon and Zoloft for this condition. Geodon has received FDA approval for the treatment of schizophrenia and acute manic or mixed episodes associated with bipolar disorder. It can also be used to treat acute agitation associated with schizophrenia. Defendants are alleged, however, to have promoted Geodon for the treatment of depression, bipolar maintenance, mood disorder anxiety, aggression, dementia, attention deficit hyperactivity disorder, obsessive compulsive disorder, autism, and posttraumatic stress disorder. In addition, Plaintiffs charge Defendants with marketing Geodon as being as safe, more effective, and less costly than other antipsychotics, but in doing so materially minimizing and concealing Geodon's serious side-effects, which include increased mortality in certain elderly patient populations and an increased risk of a potentially lethal heart arrhythmia. This marketing is alleged to have taken place from January 1, 2001, through December 31, 2007. Plaintiff Dumville was prescribed Geodon in 2001 to treat his depression. He alleges that he received no medical benefit from taking Geodon and "immediately" stopped taking it due to suffering from "a number of severe side effects," although the exact nature of these side effects is undisclosed. Further, Plaintiff alleges that he could have been prescribed other, less expensive alternatives, including cognitive behavioral therapy, tricyclics, and MAO inhibitors.

Zoloft is an anti-depressant that inhibits the reuptake of serotonin by neurons, and was approved by the FDA in 1991 for the treatment of depression. In February of 2003, it was also approved for acute and long-term treatment of social anxiety disorder. Plaintiffs allege that, in promoting Zoloft, Defendants "paid illegal remuneration for speaker programs, mentorships, preceptorships, journal clubs and [gave] gifts including entertainment, cash, travel, and meals to health care professionals to induce them to prescribe Zoloft." Although Plaintiff Dumville states that he was prescribed Zoloft to treat his depression, he does not state when he was prescribed the medication, for how long of a period he took the medication, whether it had any medical benefit on his condition, or whether he suffered from any side effects due to taking the medication. He does, however, state that generic versions of the drug were available at a substantially decreased price.

Plaintiffs' Amended Complaint also contains detailed allegations about the marketing scheme for each of the drugs named in their Amended Complaint. In relation to Lyrica, Plaintiffs assert that Defendants took actions such as directing their sales representatives to discuss and use promotional materials that made representations as to the effectiveness of the drug in relation to other drugs when there were no peer-reviewed studies supporting these claims, directing sales representatives to contact doctors who did not treat any of the conditions that Lyrica was approved to treat, and using studies and speakers that supported off-label uses of Lyrica. Plaintiffs allege that these marketing strategies were developed at a series of "launch meetings" held from September of 2005 through November of 2005. Plaintiffs point to several specific times and events involved in this scheme, including the following: the September 12 through 15, 2005, formal launch of Lyrica at an Anaheim, California, meeting for the entire Western Region sales force; an October 12, 2005, e-mail to the sales force that authorized the promotion of "secondary

endpoints," which were essentially beneficial off-label uses of the drug; the Point of Action meeting held in Indianapolis, Indiana, on October 31 through November 2, 2005, that also encouraged sales representatives to promote Lyrica for unapproved uses; a meeting held at the Technology Park Hilton in Denver, Colorado, on May 9, 2006, at which sales representatives were directed to make comparisons of Lyrica to Keppra, using data from two separate studies, but presenting it in a manner that gave the impression that the two had been the subject of a head-to-head comparison; a March 2006 meeting for newly hired sales representatives held at the Arrowwood facility in upstate New York during which Defendants directed their sales force to compare Lyrica to gabapentin despite a lack of studies supporting this marketing, and that was followed by a promotional pamphlet making such comparisons in September of 2006; and a sales-force training on promoting Lyrica for off-label uses, and specifically on comparing Lyrica to gabapentin, that was conducted at the Galena, Illinois, meeting on May 30 and 31, 2006. Finally, throughout this time period, Plaintiffs assert that Defendants paid significantly increased honoraria and speaking fees to doctors and physician assistants to promote Lyrica for off-label uses.[2]

Plaintiffs also provide extensive detail regarding the alleged illegal marketing of Geodon. Plaintiffs assert that the scheme to market for off-label uses began in November 2002 at a meeting of Pfizer sales managers at the Disney Complex in Orlando, Florida. Plaintiffs note that a key to this program was the involvement of Dr. Neil S. Kay, who was paid significantly more for his speeches promoting Geodon for off-label uses than Defendants usually paid for promotional speeches. As one example of such a speech, Plaintiffs point to his October 16, 2002, presentation in which he promoted Geodon for off-label uses. Plaintiffs also assert that slides from these speeches were sent to sales representatives for use in selling Geodon. Further, Plaintiffs assert that Defendants made unsubstantiated comparisons between Geodon and Seroquel, Abilify, Zyprexa, and Risperdal. This included an August 17, 2006, voice mail left for over ninety sales representatives, as well as a November 10, 2006, meeting in St. Louis, Missouri, at which allegedly false and misleading promotional materials were passed out to Defendants' sales force.

With regard to Zoloft, Plaintiffs' sole allegation in the Amended Complaint points to a misleading suggestion in Defendants' 2006 Annual Report that Zoloft is broadly indicated for children. Plaintiffs also detail the various FDA approvals and Defendants' associated marketing schemes in connection with the other drugs that are named in their Amended Complaint. We do not find it necessary to catalogue in detail all of these allegations in this Memorandum, however, as neither of the named Plaintiffs raises any allegations relating to these other drugs. These claims will turn on whether Plaintiffs have standing to assert them on behalf of yet-to-be-joined class members and on the outcome of Defendants' separate Motion to Strike Class Action Allegations, making a full consideration of the factual allegations unnecessary at this time.

---

**2.** Plaintiffs also detail violations of Defendants' own internal marketing policies and practices. These, however, do not address any communication to Plaintiffs or physicians prescribing the drugs, and have no impact on any consumer protection or other claim brought by Plaintiffs. As these allegations do not relate to any of Plaintiffs' causes of action, we will not address them here.

Plaintiff Zafarana filed this action on September 2, 2009. Defendants filed a Motion to Dismiss on January 15, 2010, and Plaintiff Zafarana then filed an Amended Complaint on February 12, 2010, adding Plaintiff Dumville at that time. Counts I through III are brought under the New Jersey Consumer Fraud Act ("NJCFA"), the Wisconsin Deceptive Trade Practices Act, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), respectively, for Defendants' misrepresentations and nondisclosures concerning the safety, efficacy, and cost effectiveness of the medications, and for Defendants' use of kickbacks and other improper inducements to deceive consumers. Plaintiffs assert that they were harmed in that Defendants' actions caused Plaintiffs to be prescribed drugs that were ineffective for Plaintiffs, that were unsafe and caused Plaintiffs to suffer side effects, and that were more expensive than other reasonable alternatives available to Plaintiffs. Count IV is brought for similar conduct, but states that it is brought pursuant to the consumer protection laws of the remaining 47 states, the District of Columbia, and Puerto Rico. Count V is for "conspiracy/concert of action/aiding and abetting," and seeks to recover for a conspiracy to defraud consumers that lasted from approximately January 1, 2001, through October 31, 2008. Finally, Count VI is a claim for unjust enrichment, and seeks to recover any overpayments that were made by Plaintiffs because they were prescribed Defendants' more expensive drugs.

### Standard

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the plaintiff has failed to "state a claim on which relief can be granted." In evaluating a motion to dismiss, the court must take all well-pleaded factual allegations as true, but it is not required to blindly accept "a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 283, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Although a plaintiff is not required to plead detailed factual allegations, the complaint must include enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

■ Federal Rule of Civil Procedure 9(b) requires that a party who is alleging fraud "state with particularity the circumstances constituting fraud." This applies both to statutory and common law claims of fraud. *Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96, 99 (3d Cir.1983). In determining whether Rule 9(b) applies, the court should look at the factual allegations that are made in support of a particular legal claim, and not whether the claim is explicitly brought as one for fraud. *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 288 (3d Cir.1992). If the plaintiff is unable to plead with specificity because the information is within the defendant's control and requires discovery, the plaintiff must explicitly allege that this information is within the defendant's control and state the facts on which the charge is based so that it is clear to the court that the charge is not baseless. *FDIC v. Bathgate,* 27 F.3d 850, 876 (3d Cir.1994) (citing *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989)).

### Discussion

■ As an initial matter, we think it necessary to clarify that Rule 9(b) does apply to the present proceedings. Plaintiffs are seeking to recover for fraudulent conduct on Defendants' part in engaging in intentionally misleading marketing that would be relied upon by physicians, and, by proxy, their patients, in order to in-

crease Defendants' profits. Plaintiffs, however, certainly have pled with sufficient particularity to satisfy Rule 9(b), as they have included great detail about people, dates, and locations allegedly involved in any fraudulent conduct. Our discussion below will not focus on whether Plaintiffs' Amended Complaint satisfies the pleading requirements of Rule 9(b), but on whether Plaintiffs' factual allegations have stated a claim on which relief can be granted.

## FDCA Bar

[3] Before addressing the sufficiency of Plaintiffs' claims, Defendants first assert that Plaintiffs have not brought a cognizable cause of action because they are merely seeking to enforce the FDCA, and there is no private cause of action for such claims. Importantly, the FDCA does not preempt other causes of action, but simply does not provide a private cause of action. To the extent that Plaintiffs are alleging conduct that gives rise to an independent cause of action, they are not barred from bringing their claims unless it frustrates the congressional intent in passing the FDCA. *Wyeth v. Levine,* —— U.S. ——, 129 S.Ct. 1187, 1203–04, 173 L.Ed.2d 51 (2009). In the present case, there is no argument from either party that allowing state law consumer protection claims would frustrate the congressional purpose in passing the FDCA. Rather, these claims would merely allow consumers to recover for any injuries suffered as a result of Defendants' misconduct, as was the case in *Wyeth.* Plaintiffs can, therefore, seek to recover under the various state law causes of action brought in their Amended Complaint, and are not barred from doing so by the FDCA.

## Statute of Limitations

■ Defendants also assert that Plaintiffs are barred by the statute of limitations from bringing the instant action. Although the statute of limitations is an affirmative defense, courts have allowed defendants to assert affirmative defenses such as the statute of limitations by way of a motion to dismiss. *Davis v. Grusemeyer,* 996 F.2d 617, 623 (3d Cir.1993). This is generally only permissible when the affirmative defense appears on the face of the complaint. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994). When facts or matters outside of the complaint are necessary to establish the affirmative defense, raising it under Rule 12(b)(6) is usually not permitted. *See Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 657 (3d Cir.2003).

■ The general rule for statutes of limitations is that they "begin[ ] to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983). The "discovery rule," however, provides an exception to this general rule. Under this doctrine, the statute of limitations is tolled if the plaintiff was unable, through the exercise of due diligence, to discover the injury or the cause thereof. *Id.* This doctrine will toll the statute of limitations only until the plaintiff discovers or reasonably should have discovered his injury and its source. *Id.* Once a plaintiff becomes aware of an injury and who caused it, he is under a duty to investigate and promptly file his suit. *Wilson v. El–Daief,* 600 Pa. 161, 964 A.2d 354, 356 (2009). Importantly, the discovery rule is a narrow exception, and will only be implicated if no amount of vigilance would have allowed the plaintiff to detect his injury. *Id.* at 357. The burden is on the plaintiff to demonstrate that he exercised reasonable diligence to discover the existence or cause of

the injury. *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir.2006). If factual issues remain as to whether the plaintiff exercised reasonable diligence or whether it was reasonable for the plaintiff to be unaware of his injury or the source thereof, these questions must be left for a jury to decide. *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 248 (1995). Alternatively, the statute of limitations may be tolled under the doctrine of fraudulent concealment. This requires that a plaintiff show a separate fraudulent act committed by the defendant to conceal the harm apart from the fraud that forms the basis for the plaintiff's complaint. *Bucci v. Wachovia Bank*, 591 F.Supp.2d 773, 787 (E.D.Pa. 2008).

■ Plaintiffs' Amended Complaint contains an entire section on the tolling of the statute of limitations, making it appropriate for Defendants to raise the issue in their Motion to Dismiss. First, Plaintiffs do not point to any separate act of fraud done by Defendants to conceal the injury, and cannot rely on fraudulent concealment to toll the statute of limitations. Factual issues exist, however, as to whether the statute of limitations was tolled by the discovery rule. The tolling of the statute of limitations in this case will depend upon whether Plaintiffs were unable to discover their injury or the cause thereof until the announcement by the Department of Justice of the settlement of the qui tam actions brought against Defendants pursuant to the FDCA. On the one hand, Plaintiffs could not be expected to know about Defendants' marketing plans or schemes, and would have no reason to expect that their doctors prescribed them medication due to fraudulent marketing by the producer of the drug. On the other hand, however, Plaintiffs could have immediately determined from the label of their medications that the drugs were not approved to treat their conditions, and that the drugs could have harmful side effects. A jury must decide whether this knowledge would lead a reasonably diligent person to follow up with his or her treating physician to determine why this medication was prescribed and whether there were other medications that might work better, cost less, or have less harmful side effects and that were readily available. The statute of limitations, therefore, does not provide grounds to dismiss this Amended Complaint.

## Count I

Count I is brought under the NJCFA. Defendants first assert that this claim must be dismissed because all claims for harm caused by products must be brought under the New Jersey Product Liability Act ("NJPLA"). Defendants also assert, in the alternative, that any claims not barred by the NJPLA should be dismissed for failing to allege adequate causation or injury.

### *NJPLA*

■ Both the NJPLA and the NJCFA are broad statutes that are meant to provide expansive protection for consumers within the state of New Jersey. The NJCFA is generally to be applied in conjunction with other state laws, and a court should only refuse to apply it if there is an "unavoidable conflict" with another state law that deals specifically with that activity. *Perez v. Rent–A–Center, Inc.*, 186 N.J. 188, 892 A.2d 1255, 1274 (2006). The NJPLA, however, covers "virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litig.*, 191 N.J. 405, 924 A.2d 484, 503 (2007). Further, the NJPLA establishes a legislative balance between consumer and producer, and to allow cumulative causes of action based upon the same conduct would run counter to the legislative intent. *McDarby v.*

*Merck & Co.*, 401 N.J.Super. 10, 949 A.2d 223, 278 (N.J.Super.Ct.App.Div.2008). The NJPLA, therefore, prevents a plaintiff from bringing a claim under the NJCFA if the plaintiff is alleging that the drug had the potential to cause harm that is covered by the NJPLA, *Sinclair v. Merck & Co.*, 195 N.J. 51, 948 A.2d 587, 595–96 (2008), if the plaintiff is alleging that the defendant failed to warn of the dangers of taking the drug, or if the plaintiff is alleging that the defendant misrepresented or concealed material information when marketing the drug. *McDarby*, 949 A.2d at 277. All of these causes of action are specifically addressed by the NJPLA, and allowing a claim under the NJCFA would create an unavoidable conflict with the legislative intent and balancing behind the NJPLA. To the extent that Plaintiffs are attempting to bring a claim under the NJCFA that could be brought under the NJPLA, therefore, it will be dismissed.

The NJPLA clarifies when a plaintiff can bring a product liability action under New Jersey law. N.J. Stat. Ann. § 2A:58C–2 (West 2000). It defines a "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *Id.* § 2A:58C–1(b)(3). The Act also defines "harm" as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." *Id.* § 2A:58C–1(b)(2). To the extent that Plaintiffs are trying to bring a claim that falls within these definitions, therefore, it must be brought pursuant to the NJPLA and not the NJCFA.

As stated above, Plaintiffs claim three harms from Defendants' actions. First, Plaintiffs claim that they took a drug that was ineffective for treating their condition. Second, they allege that these drugs caused side effects. Third, Plaintiffs assert that Defendants' course of action caused Plaintiffs to pay a great deal more for drugs than they would have otherwise had to pay for treatment. It is clear that Plaintiffs' claims for any side effects suffered from the drugs are claims for personal injury or illness and, therefore, cannot be brought under the NJCFA. We also find that Plaintiffs' claims for the ineffectiveness of the product are barred by the NJPLA. Plaintiffs essentially claim that Defendants' actions caused them to continue to suffer from physical illness. As the NJPLA covers personal injury actions for harm caused by a product regardless of the theory under which it is brought, we find that a continuing physical illness falls within the Act's expansive definition of harm. Plaintiffs' third alleged injury, however, is not a harm within the meaning of the NJPLA, and, therefore, is not barred by that Act. The NJPLA does not include monetary harm caused by buying a more expensive product within its definition of harm. Because the NJPLA does not specifically address this harm, it is appropriate to apply the NJCFA in conjunction with the NJPLA for the purposes of this limited claim. Plaintiffs can, therefore, bring an action under the NJCFA to recover for the increased amount that they paid for treatment.

*NJCFA*

To state a claim under the NJCFA, a plaintiff must allege unlawful conduct, an "ascertainable loss," and that the loss was caused by the unlawful conduct. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck &*

*Co.,* 192 N.J. 372, 929 A.2d 1076, 1086 (2007). This Act imposes liability for three categories of behaviors: affirmative acts, knowing omissions, and regulatory violations. *Int'l Union,* 929 A.2d at 1086. Importantly, a plaintiff need not allege any reliance, *Heindel v. Pfizer, Inc.,* 381 F.Supp.2d 364, 373 (D.N.J.2004), or prove that the defendant had any sort of malicious intent. *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454, 462 (1994). Further, the plaintiff need not be in privity with the defendant in order to bring a claim. *Katz v. Schachter,* 251 N.J.Super. 467, 598 A.2d 923, 926 (N.J.Super.Ct.App.Div.1991). To establish a loss, the plaintiff must point to evidence that would allow an inference that there was an actual loss, and cannot rely on a loss that is purely hypothetical. *Thiedemann v. Mercedes–Benz USA, LLC,* 183 N.J. 234, 872 A.2d 783, 792 (2005). Finally, the fact that the plaintiff has not yet been required to pay for the loss does not prevent him from bringing a claim so long as he provides an estimate of the amount that he will pay due to the unlawful act. *Cox,* 647 A.2d at 464.

■ In the present case, Plaintiffs' claims under the NJCFA fail because they do not successfully allege causation or a cognizable injury. As noted above, the only "ascertainable loss" that could be brought under the NJCFA instead of the NJPLA is that Plaintiffs paid more money for Defendants' medications than they would have paid for alternative treatments for their conditions. Importantly, Plaintiffs cannot, and do not appear to attempt to, claim that Defendants committed a fraud on the market and thereby artificially inflated the prices of their medicines. *See Int'l Union,* 929 A.2d at 1088 (stating that a fraud-on-the-market claim is not cognizable under the NJCFA). Instead, Plaintiffs state that without Defendants'

fraudulent marketing scheme, they would not have been prescribed Defendants' expensive medications, and, instead, could have purchased cheaper alternatives. Plaintiffs, however, simply have not stated any facts that make it plausible that a less expensive alternative would have been prescribed. Plaintiffs seem to ignore the role played by the prescribing physician in this case. They have not stated, and likely cannot state, that they *would* have been prescribed other, less costly medications, but only that they *could* have been prescribed such medications. It is also true, however, that they could have been prescribed a more expensive medication, or a combination of other medications that, while individually less expensive, were cumulatively more expensive. Due to the discretion of the prescribing physician, the injury alleged is entirely hypothetical, and cannot provide the basis for a claim under the NJCFA. Further, for similar reasons, it cannot be said that Defendants caused any increased cost paid by Plaintiffs. In essence, Plaintiffs have alleged that the reason that they were prescribed Defendants' medications was because of Defendants' conduct, but they have not alleged that Defendants caused them to overpay for treatment because they have not shown that in the absence of Defendants' conduct they would have been prescribed a different medication. In the absence of a cognizable injury and a demonstration of causation, Count I of Plaintiffs' Complaint must be dismissed.

**Count II**

■ Although the named Plaintiffs appear to attempt to bring a claim under Wisconsin's Deceptive Trade Practices Act, none of the allegations contained in the Amended Complaint relate to the prescription, purchase, or use of any of Defendants' drugs within the state of Wisconsin. The fact that Plaintiff Dumville currently

lives in Wisconsin has no impact on the applicability of Wisconsin law to conduct that occurred in connection with the prescription, purchase, and use of drugs in another state. To the extent that this claim is viable, therefore, it would be on behalf of absent class members. Because of this fact, a discussion of Count II is better left to be undertaken in connection with our analysis of Count IV, which raises claims on behalf of those similarly situated in other states.

## Count III

Count III brings a claim under Pennsylvania's UTPCPL. Defendants first assert that the UTPCPL does not apply to prescription drugs. Defendants further argue that any improper action occurred after Plaintiff Dumville had suffered any injury, and, therefore, could not have been the cause of his alleged injury. Finally, Defendants urge this Court to dismiss Count III for failing to adequately plead all of the elements of a cause of action under the UTPCPL.

*UTPCPL and Prescription Drugs*

Defendants first assert that the UTPCPL does not cover prescription drugs. In support of this assertion they cite *Smith v. Bristol–Myers Squibb Co.*, No. 06–6053, 2009 WL 5216982 (D.N.J. Dec. 30, 2009), *Albertson v. Wyeth Inc.*, No. 02–2944, 2003 WL 21544488 (Pa.Ct. Com.Pl. July 8, 2003), and *Luke v. American Home Products Corp.*, No. 98–1977, 1998 WL 1781624 (Pa.Ct.Com.Pl. Nov. 18, 1998). These cases, however, do not provide a categorical exception for prescription drugs from the UTPCPL. Instead,

these cases note that the existence of the "learned intermediary" doctrine in Pennsylvania makes it difficult, if not impossible, for plaintiffs to successfully bring a UTPCPL claim based on a prescription drug. Although we will consider this fact when addressing Plaintiffs' claims, given that there is not a categorical exception, we will address the merits of Plaintiffs' UTPCPL claim.

*UTPCPL*

The UTPCPL makes unlawful any "unfair methods of competition and unfair or deceptive acts" as defined by the statute. 73 Pa. Stat. Ann. § 201–3 (West 2008). Included in the definition of unfair methods of competition and unfair or deceptive practices is a catchall provision that prohibits a corporation from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 201–2(4)(xxi). An allegation that the defendant has engaged in fraudulent conduct requires a showing of all of the elements of common law fraud, but this is not true when the plaintiff alleges that the defendant has engaged in deceptive conduct.[3] *Seldon v. Home Loan Servs., Inc.*, 647 F.Supp.2d 451, 469 (E.D.Pa.2009). A private individual can bring an action under the UTPCPL if he suffers an "ascertainable loss ... as a result of" the defendant's use of a fraudulent or deceptive practice. 73 Pa. Stat. Ann. § 201–9.2(1)(a). Because of this section, courts have routinely determined that a plaintiff must demonstrate that he justifiably relied on the defendant's conduct in order to establish the causation

---

**3.** Although as originally passed the statute only covered "fraudulent" practices, it was amended in 1996 to include deceptive conduct, and the Pennsylvania Supreme Court has stressed that the UTPCPL should be broadly construed. *Flores v. Shapiro & Kreisman,* 246 F.Supp.2d 427 (E.D.Pa.2002). For

these reasons, we will not require Plaintiffs to establish conduct amounting to common law fraud in order to state a claim under the catchall provision of the UTPCPL, even though the Pennsylvania Supreme Court has not yet interpreted this provision as amended.

prong. *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 777 A.2d 442, 446 (2001); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir.2008).

█ In this case, Defendants allege both that there could be no justifiable reliance in general due to the operation of the learned intermediary doctrine, and that there could be no justifiable reliance on Plaintiff Dumville's part specifically as he took the medicine before any of the allegedly fraudulent or deceptive practices occurred in Pennsylvania. In this case we need not reach the specific allegations brought by Plaintiff Dumville as we find that the learned intermediary doctrine prevents there from being any justifiable reliance, and, therefore, Plaintiffs have not stated a claim under the UTPCPL. Under the learned intermediary doctrine, the drug manufacturer owes a duty of disclosure to the prescribing physician, but it is then the duty of the prescribing physician to communicate any risks or other information about the drug to the patient. *See Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 31–32 (Pa.Super.Ct.2006). In other words, a patient in Pennsylvania cannot justifiably rely on the prescription drug manufacturer; instead, it is the prescribing physician who provides the grounds for justifiable reliance. Further, in the present case, any misrepresentations were made to prescribing physicians and not to Plaintiffs. The allegations in Plaintiffs' Amended Complaint only refer to practices taken, and representations made, by Defendants in their relationship with physicians. Plaintiffs' claims depend on a chain of reliance from Defendants to the prescribing physicians and the prescribing physicians to patients. This, however, cannot be used to allow Plaintiffs to claim that they justifiably relied on any representation made by Defendants. Under these circumstances, Plaintiffs cannot claim any justifiable reliance, and their UTPCPL claim must fail.

**Count IV**

█ Count IV seeks to bring claims pursuant to the consumer protection laws of all other states on behalf of, at this point, absent class members. Although it is true that the fact that an suit is a class action does not change the question of standing, *Lewis v. Casey*, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), it is also true that a complaint does not become a class action until the class is certified. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998), *abrogation on other grounds rec. by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir.2000). In the present case, this suit is not yet a class action, but we have not yet considered a motion to certify a class and have not yet addressed Defendants' Motion to Strike Class Action Allegations. Although Plaintiffs do not have standing to litigate on behalf of non-parties, Defendants cannot defeat a class action simply by requesting dismissal for lack of standing before a decision is reached on class certification. So long as Plaintiffs have alleged a personal cause of action that survives the instant Motion to Dismiss, we will consider Plaintiffs' class action allegations when evaluating Defendants' separate Motion to Strike Class Action Allegations and any future motion to certify a class. Should Plaintiffs' claims all be dismissed, however, we will also dismiss the claims brought on behalf of the absent class members as a suit cannot move forward with only absent, to-be-determined members of a to-be-certified class.

**Count V**

Count V brings charges for "conspiracy/concert of action/aiding and abetting," and it appears that these are brought un-

der the laws of all fifty states, the District of Columbia, and Puerto Rico. For the purposes of this Memorandum, we will only address the claims brought under the laws of Pennsylvania and New Jersey, as these are the claims brought by the plaintiffs who are currently parties in this action.[4]

Under New Jersey law, a conspiracy requires two or more people acting together, an agreement to commit an act to inflict a wrong, an overt act in furtherance of this agreement, and damages. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 876 A.2d 253, 263 (2005). In New Jersey, "[a] civil action for conspiracy is essentially a tort action." *Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 496 (D.N.J.1998). In other words, it is not just the act of agreement that gives rise to a civil action for conspiracy, but the existence of an underlying wrong that could be brought as a separate cause of action. *Banco Popular*, 876 A.2d at 263; *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F.Supp.2d 506, 517 n. 10 (D.N.J. 2002).

Under Pennsylvania law, a cause of action for conspiracy requires that the plaintiff demonstrate a combination of at least two individuals acting with a common purpose of committing an unlawful act, an overt act in furtherance of this agreement, and some sort of actual legal damage to the plaintiff. *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 262 (3d Cir. 2004). Importantly, to state a claim for conspiracy under Pennsylvania law, "it must be alleged that the *sole* purpose of the conspiracy was to injure the Plaintiffs." *Morilus v. Countrywide Home*

*Loans, Inc.*, 651 F.Supp.2d 292, 313 (E.D.Pa.2008).

Plaintiffs cannot maintain an action for conspiracy under either the laws of Pennsylvania or New Jersey. First, under New Jersey law, Plaintiffs must demonstrate an agreement to commit an act that would give rise to an independent cause of action. As noted above, Plaintiffs have not stated a claim under the NJCFA, and as will be discussed below, they also do not plead a cause of action for unjust enrichment. In the absence of a claim for any underlying wrong, they cannot maintain a claim for civil conspiracy under New Jersey law. Turning to Plaintiffs' claim under Pennsylvania law, as noted above, Plaintiffs have not alleged that the sole purpose of any conspiracy was to injure Plaintiffs. Indeed, their allegations are directly contrary to such a finding. Plaintiffs' Amended Complaint details the ways in which Defendants' marketing strategy was developed to maximize profit. Plaintiffs repeatedly chastize Defendants for being solely concerned with maximizing their profit and not paying enough attention to the consumers. Nowhere in Plaintiffs' Amended Complaint are Defendants alleged to have acted with an intent to harm Plaintiffs, much less that it was Defendants' sole intent to harm Plaintiffs. With these allegations, we cannot find that Plaintiffs have pled a cause of action for conspiracy under Pennsylvania law.

Plaintiffs also allege "concert of action" and "aiding and abetting" in their Amended Complaint. It is unclear whether Plaintiffs view these as separate causes of action, or whether Plaintiffs are simply captioning this Count in a way that covers the different wording given by dif-

4. Plaintiffs' Amended Complaint is not explicit on the laws that give rise to their claims in this Count. As discussed above, however, it appears clear that Plaintiff Zafarana's claims are governed by New Jersey law and Plaintiff Dumville's claims are governed by Pennsylvania law. We will, therefore, examine these states' laws in this section.

ferent states to essentially the same civil cause of action. To the extent that Plaintiffs are trying to bring these as separate causes·of action, this attempt fails. First, there is no cause of action for aiding and abetting fraud under Pennsylvania law. *WM High Yield Fund v. O'Hanlon,* No. 04–3423, 2005 U.S. Dist. LEXIS 12064, at \*50 (E.D.Pa. May 13, 2005). Although New Jersey does have a cause of action for aiding and abetting fraud, this requires that the party to whom aid was provided have committed a tort, that the defendant be aware that his aid played a role in furthering this tort, and that the defendant "knowingly and substantially assist[ed]" the third party. *New Jersey v. Qwest Commc'ns Int'l, Inc.,* 387 N.J.Super. 469, 904 A.2d 775, 783–84 (N.J.Super.Ct.App.Div.2006). As discussed above, there is no separate underlying tort under New Jersey law pled by Plaintiffs in their Amended Complaint, and this cause of action would, therefore, also fail.

■ Plaintiffs, however, for the first time in their Response in Opposition to Defendants' Motion to Dismiss state that they have pleaded a cause of action for aiding and abetting a breach of fiduciary duty. Not only is this a claim that is raised nowhere in Plaintiffs' 178–page Amended Complaint, but it is not a claim that can be maintained by Plaintiffs against these Defendants. First, Plaintiffs cite no case from Pennsylvania or New Jersey applying a cause of action for aiding and abetting a breach of fiduciary duty, and this Court is not willing to create such a cause of action here. Further, even if this were a cognizable cause of action, Plaintiffs have not demonstrated any basis for finding that there was any fiduciary duty owed to the consumers in this situation, much less a breach of this fiduciary duty. In these circumstances we cannot allow a cause of action for aiding and abetting a breach of a fiduciary duty to proceed.

## Count VI

Finally, Plaintiffs seek to bring an action for unjust enrichment to recover the funds paid to Defendants that would otherwise have been spent on less expensive treatments provided by Defendants' competitors. As this Count also fails to state a cognizable cause of action, we will dismiss it as well.

■ Under New Jersey law, unjust enrichment can be established by demonstrating that the defendant received a benefit from the plaintiff and that allowing the defendant to keep this benefit would be unjust. *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 641 A.2d 519, 526 (1994). Importantly, any benefit that is conferred must be direct. *Maniscalco v. Brother Int'l Corp.,* 627 F.Supp.2d 494, 506 (D.N.J. 2009). There is no separate tort cause of action for unjust enrichment in New Jersey; instead, unjust enrichment provides the underlying logic for several torts, and also provides the basis for establishing quasi-contract liability. *Castro v. NYT Television,* 370 N.J.Super. 282, 851 A.2d 88, 98 (N.J.Super.Ct.App.Div.2004). Similarly, under Pennsylvania law, the plaintiff must demonstrate that he conferred a benefit on the defendant, that the defendant knew of the benefit and accepted or retained it, and that it would be inequitable to allow the defendant to keep the benefit without paying for it. *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.Ct.1999). As in New Jersey, unjust enrichment is not a substitute for failed tort claims in Pennsylvania, *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 937 (3d Cir.1999), but, instead, will generally be used to imply quasi-contract liability. *Pa. ex rel. Pap-*

pert v. TAP Pharm. Prods., Inc. 885 A.2d 1127, 1137 (Pa.Commw.Ct.2005).

In this case, Plaintiffs appear to attempt to bring tort actions for unjust enrichment, which is not permitted under either Pennsylvania or New Jersey law. Plaintiffs allege that Defendants' actions caused a harm to Plaintiffs, and assert that Defendants should not be permitted to profit from this harm. This, however, is not sufficient to allow for recovery under the unjust enrichment doctrine. First, there is no showing that this would be an appropriate situation to imply quasi-contract liability, as there was no direct relationship between Plaintiffs and Defendants or an allegation that Defendants refused to provide a service or good after Plaintiffs had provided Defendants with a benefit. Instead, the allegation is that Defendants misled Plaintiffs into desiring a product, which Defendants then provided to Plaintiffs in exchange for payment. This simply is not an appropriate circumstance in which to create quasi-contract liability. Further, Plaintiffs do not plead a separate tort, the damages from which could be supported by a theory of unjust enrichment. As Plaintiffs cannot bring an action for a stand-alone tort of unjust enrichment under either Pennsylvania or New Jersey law, Plaintiffs' claims under Count VI will also be dismissed.

**Leave to Amend**

Finally, Plaintiffs request that as an alternative to granting Defendants' Motion to Dismiss, this Court grant leave to amend the Complaint a second time. The Third Circuit has stated that a curative amendment should be allowed unless such an amendment would be "inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir.2004). In the present case, however, we believe that allowing a second amendment would be both inequitable and futile, and will, therefore, deny Plaintiffs'

request. First, Plaintiffs have already amended their Complaint once following Defendants' First Motion to Dismiss. This amendment added over 140 pages to the Complaint and prompted a second Motion to Dismiss by Defendants. This Motion to Dismiss, unlike the first, was fully briefed, and resulted in the present decision. To require Defendants to file a third motion to dismiss and fully brief that motion would be inequitable, especially when the original Complaint was filed over ten months ago. Further, we believe that any additional amendment would be futile. Not only is this Court unsure of what Plaintiffs would add to their 178–page Amended Complaint, but we are unsure of what Plaintiffs could add to state a claim. The facts of this case are abundantly clear at this point, and it simply appears that Plaintiffs have not alleged, and likely cannot allege, a cognizable injury or sufficient theory of causation as would be required to sustain all of their claims. Our decision is not based on what level of specificity is required to meet the pleading standards or on Plaintiffs' failure to allege certain elements of a claim. Instead, this decision was based on a reading of the various laws at issue in this case and a determination that the conduct alleged by Plaintiffs does not give rise to a cause of action under any of the Counts contained in their Amended Complaint. Under these circumstances, we will deny Plaintiffs' request to file a second amended complaint in this action.

### Conclusion

Plaintiffs' Amended Complaint shall be dismissed in its entirety. Plaintiffs fail to state a claim for the violation of the NJCFA or the UTPCPL. Further, Plaintiffs have not pled a cause of action for conspiracy, concert of action, aiding and abetting, or unjust enrichment under the laws of Pennsylvania or New Jersey. All claims that the named Plaintiffs raise on

their own behalf, therefore, are dismissed. As we cannot allow the action to continue with unknown members of an uncertified class, we must also dismiss Counts II and IV. Finally, as we find that any future amendment to this Complaint would be futile, Plaintiffs shall not be granted leave to amend their Amended Complaint.

### ORDER

AND NOW, this 19th day of July, 2010, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 17) and responses thereto, it is hereby ORDERED that the Motion is GRANTED and Plaintiffs' Amended Complaint is DISMISSED.